# Keystone Elevator and Warehouse Company v. Pennsylvania Railroad Company, Appellant.

*Contracts—Evidence—Relevancy—Grain elevator companies—Railroads—Oral agreement—Value of services.*

A railroad company and a grain elevator company entered into an agreement under which the latter performed certain services

in connection with the loading and unloading of cars at its elevator, and the collection of freight charges, for which a reasonable compensation was to be paid by the railroad company. After acting under the agreement for more than a year the parties terminated the agreement by mutual consent. The elevator company demanded for its services thirty-five cents for each ton of grain handled by it during the existence of the agreement, and offered evidence to show that the services were reasonably worth that amount. Plaintiff's evidence was uncontradicted, but defendant offered to show that an officer of the plaintiff company owned a large percentage of its stock, that he was also a partner in a firm of grain dealers, and that he was the owner of a patented process for cleaning grain, which netted him large profits. The referee refused to admit the evidence on the ground that such evidence was not relevant in determining the value of the services rendered by the plaintiff and that defendant could not be permitted to go behind the corporate entity of plaintiff company to inquire into the profits derived by stockholders from other sources. *Held,* the court did not err in dismissing exceptions to the referee's report and in entering judgment for the plaintiff.

Argued May 5, 1914. Appeal, No. 123, Jan. T., 1914, by defendant, from judgment of C. P. No. 5, Philadelphia Co., March T., 1911, No. 2319, for plaintiff on report of referee in case of Keystone Elevator and Warehouse Company v. Pennsylvania Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Assumpsit on oral agreement for services rendered.

Exceptions to report of G. Heide Norris, referee.

From the record, it appeared that plaintiff rented from defendant a grain elevator and appurtenances at a stipulated yearly rent; that on March 1, 1909, plaintiff and defendant made an oral agreement that defendant should do the necessary shifting of cars to and from the elevator; that plaintiff would make reasonable efforts to secure traffic for defendant, would furnish manual labor to load and unload the cars of defendant at the elevator, would pay the operating expenses of the elevator and collect for defendant freight and charges on all

traffic delivered at the elevator, in consideration of which, defendant agreed to pay plaintiff a just and reasonable sum for each ton of grain and merchandise handled by it through the elevator. The parties acted under this oral agreement until April 30, 1910, when it was terminated by mutual consent. The plaintiff demanded of defendant thirty-five cents for each ton of merchandise handled by plaintiff during the existence of the agreement. As calculated by plaintiff the amount due was $42,828. Defendant paid plaintiff $28,420.19, being the amount according to defendant's calculations which it admitted to be due and which it claimed was the actual cost to plaintiff of performing the services rendered. Plaintiff claimed to recover the balance, with interest. Other facts appear in the following opinion of the court sur exceptions to the referee's report:

The plaintiff established its case by proving in the usual way that its services were reasonably worth thirty-five cents a ton, and the learned referee found that that was a reasonable charge. The defendant did not offer testimony to contradict these witnesses, but offered to prove that one Miller owned 93.6 per cent. of the stock of the plaintiff company; that he was one of the partners in the firm of L. F. Miller & Sons, grain dealers; that he was also an owner of a patented process for cleaning grain used in the elevator of the plaintiff company; and that in all of these capacities he derived large profits. The offers are stated at length in the report of the learned referee. The learned referee refused to admit these offers of proof.

The court is of opinion that in the present action the defendant cannot be permitted to go behind the corporate entity of the plaintiff company and inquire into the profits derived by that company or its stockholders from other sources. The one question to be determined by the referee was: What were the services of the plaintiff company reasonably worth? In this action, the value of the services rendered by the plaintiff must be

determined without regard to the profits which the plaintiff derives from other sources. If the plaintiff or its stockholders were operating at a loss or were deriving very small profits from their business, the services rendered by them to the defendant company would not be worth more on that account. So the fact that they are making profits in their business does not affect the value of the services rendered to the defendant. This court must regard the present case in the same way as it would consider any other action in assumpsit to recover the value of services rendered or goods sold and delivered. It cannot attempt to fix the prices which the plaintiff ought to have charged, in any other manner than by hearing testimony from persons having knowledge of the business and of similar services and stating what the reasonable market value of such services is.

The court dismissed the exceptions to the referee's report and entered judgment for the plaintiff for $20,-827.27. Defendant appealed.

*Errors assigned* were in dismissing the exceptions and the judgment of the court.

*John Hampton Barnes,* for appellant .

*M. Hampton Todd,* for appellee.

PER CURIAM, July 1, 1914:
The judgment is affirmed on the opinion of the learned judge of the Common Pleas.